IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JORGE ORLANDO CABRERA,

Petitioner,

v.

RICK COURSEY

Respondent.

Civil No. 09-1255-AC

FINDINGS AND RECOMMENDATION

C. RENEE MANES
Assistant Federal Public Defender
101 SW Main St., Suite 1700
Portland, OR 97204

Attorney for Petitioner

JOHN KROGER
Attorney General
ANDREW D. HALLMAN
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301

Attorneys for Respondent

ACOSTA, Magistrate Judge.

Petitioner, in custody of the Oregon Department of Corrections, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction and sentencing upon his pleas of no contest to one count of Manslaughter in the First Degree, one count of Robbery in the First Degree, and one count Burglary in the First Degree. In his *pro se* petition he contends he was "denied due process, equal protection, a jury trial, and effective assistance of counsel...." (#1, at 5.) For the reasons set forth below, the Petition for Writ of Habeas Corpus (#1) should be denied and this proceeding dismissed, with prejudice.

**BACKGROUND**[1]

On April 27, 2000, police responding to a silent alarm at a residence saw Petitioner and his companion, Lomax, inside. (Ex. 143.) Upon noticing the police outside, Petitioner and Lomax hid in the attic. (*Id.*) Police entered the residence and found the body of Kim Ly, hands and feet bound, in an area of the bedroom where they had previously observed Petitioner jumping up and down. (*Id.*) Police apprehended Petitioner and Lomax as they hid in the attic. (*Id.*)

In separate interviews, Lomax and Petitioner told detectives they went to Ly's residence to commit a robbery because they had

---

[1]Information in this section is taken from Respondent's Response (#9), and from the Exhibits to Answer (#11).

heard he was a drug dealer who kept large amounts of cash and drugs on hand. (#9, at 1; Ex. 143.) Each attributed the injuries to the victim to the other. (Ex. 143.) Petitioner admitted being armed with a handgun when he and Lomax entered the residence, but he denied using it. (*Id.*) He admitted to punching the victim, but reported Lomax hit the victim in the head with a dumbbell from a weight set found in the residence. (*Id.*) Petitioner was adamant he did not kill anybody. (*Id.*) An autopsy revealed the victim suffered several severe blows to the back of the head, causing internal injuries, and there was evidence of strangulation. Either were sufficient to cause death. (#9, at 2.)

Petitioner and Lomax were indicted on five counts of Aggravated Murder, three count of Burglary in the First Degree, two counts of Robbery in the First Degree, and one count of Robbery in the Second Degree. (Ex. 102.) Prosecutors indicated they would seek the death penalty. Lomax pleaded guilty to Felony Murder with an indeterminate life sentence and a 25-year minimum term of imprisonment in exchange for cooperating with prosecutors. (#9, at 2.)

Petitioner was appointed counsel but after approximately one year he requested new counsel, which the court granted. (Ex. 128 at 2; Ex. 134 at 1.) Replacement counsel, Richard Wolf ("Wolf") was appointed on March 8, 2001, with co-counsel James Lang ("Lang") appointed on May 9, 2001.

Counsel raised the issue of Petitioner's mental competency and ability to assist in his defense on several occasions. Petitioner was evaluated by mental health professionals on multiple occasions, including during a court ordered evaluation at the Oregon State Hospital. In a hearing on Friday November 15, 2002, the Honorable Marshall Amiton, Circuit Court Judge, summarized the testimony of the professionals who evaluated Petitioner and, applying the clear and convincing evidence standard out of an abundance of caution, made findings that Petitioner "has a mental disease or defect in the area of retardation. There's also the diagnosis of expressive/receptive disorder." (Ex. 122 at 4-9.) With respect to the question of whether Petitioner was able to understand the proceedings and aid/assist in his defense, the court found that he could, based on the assessments of the mental health professionals. (*Id.* at 9-10.) The court issued its Order Finding Defendant Able to Aid and Assist on January 30, 2003. (Ex. 121.)

On September 9, 2003, counsel moved to have Petitioner's fitness to stand trial re-evaluated based on their belief his ability to understand the proceedings or assist and cooperate with counsel had deteriorated. (Ex. 124.) The court granted counsels' motion and scheduled a hearing. (Exs. 123.) On September 19, 2003, the court issued an order stating: "According to Psych Evaluation and Report defendant is able to aid and assist. Court finds that defendant is able to aid and assist, case to proceed to

trial." (Ex. 125.)

On October 6, 2003, Wolf and Lang moved to withdraw. (Ex. 127.) Counsels' supporting memorandum and affidavit detailed a breakdown in the attorney client relationship, with Petitioner refusing all contact with counsel and filing bar complaints against both attorneys, as well as Petitioner's refusal to consider the plea agreement counsel negotiated. (Exs. 127, 128.) Counsel also reiterated their concern that Petitioner was unable or unwilling to aid in his defense. Counsels' motion to withdraw was denied with the Court specifying it "d[id] not find ethical cause to relieve defense counsel." (Exs. 127, 128 and Ex. 126.)

The plea agreement counsel presented to Petitioner was negotiated directly with the Chief Deputy District Attorney after the Senior Deputy District Attorney assigned to the case refused to offer anything less than felony murder. (Ex. 134.) Terms of the agreement provided Petitioner would plead no contest to Manslaughter in the First Degree and guilty to Robbery in the First Degree and Burglary in the First Degree, with an upward departure sentence of 240 months for the manslaughter - 120 months of which was the mandatory minimum under Measure 11, a concurrent Measure 11 sentence on the burglary, and 50 of the 90 months Measure 11 sentence for Robbery consecutive to the manslaughter, for a total of 290 months imprisonment. (Ex. 134 at 4.) The agreement was later amended to allow Petitioner to challenge the orders finding

him able to assist in his defense and the order denying Wolf and Lang's motion to withdraw on direct appeal. (*Id.*; Ex. 103.) Petitioner signed the plea agreement, and in a plea hearing on October 15, 2003, the state court accepted his pleas. (#12.)

Petitioner filed a direct appeal in which he challenged only the upward departure sentencing on the manslaughter conviction. Petitioner acknowledged he stipulated to the sentence and that the alleged error was not preserved, but he argued the legal error was apparent on the face of the record and cited *Blakely v. Washington*, 542 U.S. 296 (2004) in claiming the sentence was improper. (Ex. 105.) The Oregon Court of Appeals affirmed the sentencing court without opinion, and the Oregon Supreme Court denied review. (Exs. 109, 108.) Appellate judgment was final January 10, 2007.

Petitioner filed a timely petition for post-conviction relief ("PCR"), raising the following three claims:

> (1) Inadequate Assistance of Counsel
> Counsel failed to adequately explain to Petitioner the possible consequences of his plea[;]
>
> (2) Denial of Adequate Representation
> Court erred when it failed to grant Petitioner's request for substitute counsel when there was a conflict of interest in Counsel's representation of Petitioner. Petitioner's Tort Claim against his counsel prevented Counsel from providing adequate and fair representation[;]
>
> (3) Petitioner was denied his 6th Amendment right to a jury trial
> The Court unlawfully sentenced Petitioner to upper departure sentences without having the departure factors proved to a jury.

(Ex. 110 at 3-5.) PCR counsel filed a notice that Petitioner elected to rely on his pro se petition.[2] (Ex. 111). The PCR trial court denied relief in a general judgment stating:

> A. Petitioner failed to prove each and every allegation of [the] Petition[;]
> B. Court finds that Petitioner understands more English than he admits to[;]
> C. Court finds that Petitioner feigns ignorance on many issues.

(*Id.*, Ex. 147 at 2-3.) Petitioner appealed, filing a *Balfour* brief with a Section B to present the issues.[3] Respondent filed a Motion for Summary Affirmance and the Oregon Court of Appeals granted the motion. (Ex. 151.) The Oregon Supreme Court denied review. (Ex. 153.)

In the instant petition, Petitioner asserts he is entitled to relief on the grounds that "he is being unlawfully detained in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States constitution, because he was denied

---

[2]The record before this Court does not include a memorandum in support of the PCR petition, suggesting one was not filed in the PCR proceedings.

[3]Upon concluding that only frivolous issues exist on direct appeal, a *Balfour* brief allows appointed counsel to meet constitutional requirement of "active advocacy" without violating rules of professional conduct. Section A, signed by counsel, contains a statement of the case, including a statement of facts, sufficient to apprise the court of the jurisdictional basis for the appeal, but contains no assignments of error or argument. Section B, signed only by the appellant, is a presentation of the issues that appellant seeks to raise but that counsel considers to be frivolous. *Balfour v. State of Oregon*, 311 Or. 434, 451-52, 814 P.2d 1069 (1991).

due process, equal protection, a jury trial, and effective assistance of counsel and he is serving unlawful sentences under unlawful convictions as set forth in paragraphs IV(d) through IV(i) of this petition and the result of which prejudiced the outcome of Petitioner's case." (#1, at 5-6.) In relevant part, paragraphs IV(d) through IV(i) specify:

> (d) Petitioner appealed his sentence claiming that the trial court violated [Petitioner's] jury trial and due process rights when it imposed a 120-month departure sentence contrary to ... *Apprendi* ... and *Blakely*.
>
> * * *
>
> (f) Petitioner asserted 3-claims for relief [in PCR].
> First, that he received ineffective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution because his plea was unknowing, unintelligent, and involuntary, and that trial counsels had a conflict of interest.
> Secondly, that the trial court violated his jury trial and due process rights under the Sixth and Fourteenth Amendments to the United States Constitution when it imposed a 120-month departure on count 1.

(#1, at 4-5.) Through counsel, Petitioner appears to raise an additional claim of trial court error asserting in his memorandum that he was incompetent, did not enter into a voluntary, knowing, and intelligent plea, and that "the trial court's failure to find him incompetent . . . was contrary to the weight of the evidence." (#19, at 14-15.) Counsel argues "the state court rulings denying his claims were unreasonable based on the factual record, . . . and contrary to the clear[ly] established Supreme Court authority on these issues." (*Id.*, at 17.)

Respondent asserts Petitioner is not entitled to relief for the following reasons: (1) the claim that the departure sentence violated Petitioner's right to a jury trial is not argued in the supporting memorandum and Petitioner thus fails to meet his burden of showing he is entitled to habeas relief; (2) the claim pertaining to counsels' alleged conflict is procedurally defaulted because, (a) if construed as a claim of ineffective assistance of counsel, it was not presented in the PCR petition and, therefore, was not properly before the PCR court; and (b) if construed as a claim of trial court error it was not raised in the proper forum - that is, on direct appeal; (3) the claim that Petitioner was incompetent to enter a plea is not properly before the Court because it was not raised in the federal petition, and it is procedurally defaulted because it was not raised in state court proceedings. (#23, 1-4.) Respondent further asserts the state PCR court decision denying relief on the claim of ineffective assistance of counsel for failing to ensure the pleas were knowingly, voluntarily, and intelligently entered is entitled to deference. (#9, 17-23; #23, 3-4.)

**DISCUSSION**

I. Unargued and Procedurally Defaulted Claims

Pursuant to 28 U.S.C. § 2248, "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be

accepted as true except to the extent that the judge finds from the evidence that they are not true." This Court has reviewed the record and finds Petitioner is not entitled to relief on the claim not argued in the memorandum and on the claims Respondent asserts are procedurally defaulted.

Before a federal court may consider granting habeas corpus relief, a state prisoner must have exhausted all available state court remedies either on direct appeal or through collateral proceedings. *See* 28 U.S.C. § 2254 (b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A state prisoner satisfies the exhaustion requirement by fairly presenting his claims to the appropriate state courts at all appellate stages afforded under state law. *Baldwin v.* Reese, 541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004). A claim is fairly presented when the state court is apprised of the facts and legal theory upon which the claim is premised. *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005); *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999). In Oregon, generally, claims of trial court error must be preserved and raised on direct appeal. *See Palmer v. State of Oregon*, 318 Or. 352, 356-58 (1994). For post-conviction relief, claims must be raised in the petition or amended petition or they are considered waived. *See Bowen v. Johnson*, 166 Or. App. 89, 93 (2000). The Oregon Supreme Court is the highest state court with jurisdiction to hear claims in satisfaction of the

exhaustion requirement. *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003).

A state prisoner procedurally defaults federal claims if he fails to raise them as federal claims in state court or is barred from doing so under applicable state procedural rules. *O'Sullivan*, 526 U.S. at 848; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Federal habeas review of procedurally defaulted claims is precluded unless the prisoner can show both "cause" for the procedural default and actual prejudice, or the prisoner demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 750.

Based on the record, Petitioner has not met his burden of showing he is entitled to federal habeas relief on the unargued claim that the departure sentence violated his right to a jury trial. Furthermore, a review of the state proceedings confirms: (1) that Petitioner's claims pertaining to counsels' alleged conflict is procedurally defaulted because, (a) when construed as a claim of ineffective assistance of counsel, the record shows it was not presented in the PCR petition and, therefore, was waived under Oregon's procedural rules; and (b) when construed as a claim of trial court error the record shows it was not raised on direct appeal, the proper forum for doing so; and (2) Petitioner's claim that he was incompetent to enter a plea and the trial court erred

in not making that finding is not properly before the Court because it was not presented in the federal petition, and it is procedurally defaulted because the claim was not raised on direct appeal or in state PCR proceedings and the time for doing so has passed. *See* Or. Rev. Stat. 138.510. To the extent Petitioner claims the PCR court erred in not granting relief based on his incompetency to enter a plea, the claim fails for the same reasons.

In sum, Petitioner is not entitled to relief on (1)the claim that the departure sentence violated his right to a jury trial; (2) the claims that counsels' alleged conflicts resulted in ineffective assistance of counsel or constituted trial court error; and (3) the claims that he was incompetent to enter a plea and the trial court erred in not making that finding and the PCR court erred in not granting relief based on his incompetency to enter a plea.

II. The Merits

Petitioner's remaining claim alleges ineffective assistance of counsel based on counsels' failure to ensure Petitioner's pleas were knowingly, voluntarily, and intelligently entered.

A. Standards of Review

An application for a writ of habeas corpus shall not be granted unless the adjudication on the merits in State court was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> 2)resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362, 386-389 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review. In *Cullen v. Pinholster*, ___ U.S. ___; 131 S.Ct. 1388, 1398-1402 (April 4, 2011), the Court reiterated the highly deferential nature of federal habeas review, and limited federal review "to the record that was before the state court that adjudicated the claim on the merits."

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) *cert. denied*, 126 S. Ct. 484 (2005). An "unreasonable application" of clearly established federal law occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lambert*, 393 F.3d at 974 (citing *Williams*). "The state court's application of . . . law must be *objectively unreasonable*." *Williams*, 529 U.S. at 411 (emphasis added). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24,25 (2002)(internal citations

omitted). "[A] habeas court must determine what arguments or theories ... could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Pinholster*, 131 S.Ct. at 1402 (citing *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002). In this proceeding, the Court reviewed the state PCR trial court decision.

In reviewing a state court decision, "[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F. 3d 992, 999 (9th Cir. 2004). This is a standard that will be met in few cases. *Id.* at 1000. When unchallenged, State court determinations of factual issues "shall be presumed to be correct." 28 U.S.C. §2254(e)(1); *Miller-el v. Cockrell*, 537

U.S. 322, 340 (2003). A Petitioner may rebut the presumption of correctness with clear and convincing evidence. *Id.*

The clearly established federal law governing claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *Pinholster*, 131 S.Ct. at 1403. Under *Strickland*, a petitioner must prove: 1) that counsel's performance fell below an objective standard of reasonableness and, 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 687-88. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. "Judicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, and "a court must indulge [the] strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 131 S.Ct. at 1407 (quoting *Strickland*) (internal quotation marks omitted.) The reasonableness of counsel's conduct must be evaluated in light of the facts of the case and the circumstances at the time of representation.

*Strickland*, 466 U.S. at 690. In addition, a doubly deferential standard of review applies to federal habeas review of ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420 (2009); *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (deference under § 2254 and deference under *Strickland*).

These standard also apply to ineffectiveness claims in the context of guilty pleas, with the petitioner required to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985). A bare allegation that a petitioner would not have pleaded guilty if he had known all the consequences of the plea is not sufficient to establish prejudice under the ...test." *Lambert*, 393 F.3d at 958 (citing *Riley*, 122 Wash.2d at 782, 863 P.2d 554).

B. Analysis

Petitioner's remaining claim alleges counsel was ineffective for not ensuring his pleas were knowingly, voluntarily, and intelligently entered. Liberally construed, the Court finds this claim to be equivalent to Petitioner's state PCR claim alleging ineffective assistance of counsel when counsel failed to adequately explain to Petitioner the consequences of his plea. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976)(courts construe pro se pleadings liberally); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)(same);

*Porter v. Ollison*, 620 F.3d 952 (9th Cir. 2010)(prisoner pro se pleadings are given the benefit of being liberally construed). In order to prevail on this claim in the PCR court, Petitioner had to show there was a reasonable probability that but for counsel's failure to advise him he would not have pleaded guilty, or in this case no contest, and would have gone to trial on the aggravated murder charge. *Hill*, 474 U.S. at 59; *Lambert*, 393 F.3d at 980.

The record before the PCR trial court included Petitioner's PCR deposition; the Transcript on Appeal with transcripts of all hearings on Petitioner's ability to assist; and copies of a letter Petitioner sent counsel detailing his dissatisfaction with the plea agreement and counsel's October 8, 2003, response with a point by point explanation in simplified terms of the agreement and how it was very favorable to Petitioner. (#11, Ex. 112 (PCR Ex. No 18, 32, 33); Ex. 139, 140.)

The PCR court did not find credible Petitioner's assertions that he did not understand the consequences of the plea and would not have accepted the plea had counsel explained it further. The PCR Court stated on the record:

> I didn't read everything, but I read parts of it. And I'm left with the impression, the very, very, very strong impression that [Petitioner] was playing games. He was feigning that he didn't understand. He would say he didn't understand the language, he didn't understand all this. He was represented by two extremely able'd lawyers. Does that mean they never can make mistakes, no, of course not. But I read part of this. They represented him well. And frankly, frankly, he got a better deal than he deserved in my opinion. But that's

> beside the point. He knew exactly what he was getting as a result of his plea. Nobody forced, nobody forced him. His deposition testimony with Mr. Marshall is almost laughable. And he's playing all this, he's pussy-footing around this whole thing. And he understands everything that's going on. I'm going to deny the motion, the petition for habeas - - for post-conviction relief.

(#11, Ex. 146 at 13.) The general judgment the PCR court issued reflected the court's credibility determination in two findings:

> B. Court finds that Petitioner understands more English than he admits to[;]
>
> C. Court finds that Petitioner feigns ignorance on many issues.

(#11, Ex. 147 at 2-3.) Absent Petitioner presenting clear and convincing evidence to the contrary, the PCR court's findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). Petitioner has not overcome this presumption.

The trial record shows that Petitioner's ability to aid and assist in his defense was an important issue raised by counsel on several occasions and that Petitioner was evaluated by numerous mental health professionals over the course of two years. (#12, Tr. on Appeal.) The trial record also shows there were conflicting opinions as to Petitioner's mental and cognitive status, as to his ability to understand the legal proceedings and assist his attorneys, and as to whether he was malingering. (*Id.*) Ultimately, taking the testimony and reports of mental health professionals into consideration, the state trial court made two determinations that Petitioner was able to aid and assist in his

defense. (#11, Exs. 121, 125.) During the plea proceeding the state court determined Petitioner understood the terms of the plea, and noted Petitioner had participated in the negotiations and fought for things that were important to him. (#12, Tr. on Appeal, Vol. 2, at 173-174.) Petitioner's PCR deposition shows Petitioner understood and responded fully to some questions, while to other questions he responded only that he did not understand or did not remember. (#11, Ex. 144.)

Based on the record before the PCR court, the Court finds: (1) there is evidence in the record to support the PCR trial court findings; (2) Petitioner did not show the PCR court that counsels' conduct was below objective standards of reasonableness; (3) Petitioner did not show he would have gone to trial on the aggravated murder charge had counsels' explanation of the plea agreement been different; and (4) it was not unreasonable for the PCR court to conclude Petitioner understood the terms of his plea and that he had not proven his claims.

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, ___ U.S. ___, 131 S.Ct. 770, 786-87 (2011). Applying the highly deferential standard of review that

governs federal habeas claims of ineffective assistance of counsel, the Court finds Petitioner has not shown it was an unreasonable application of *Strickland* for the PCR court to deny relief on his claim. Accordingly, habeas relief is precluded.

**CONCLUSION**

For the reasons stated above, the Petition for Writ of Habeas Corpus (#1) should be DENIED, and judgment should enter DISMISSING this case with prejudice. The Court further recommends a Certificate of Appealability not be issued as Petitioner has not made a substantial showing of a denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2).

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a United States District Judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 4th day of October, 2011.

John V. Acosta
United States Magistrate Judge